FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

9? JUL 30  AM 9:45

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHAEL SMITH d/b/a SMITTY'S )
ENTERTAINMENT CENTER, )
)
    Plaintiff, )
) CV 98–BU–546–S
    v. )
) ENTERED
THE CITY OF VERNON, AL., )
) JUL 30 1999
    Defendant. )

Memorandum Opinion

Michael Smith ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 alleging that

the City of Vernon, Alabama ("the City"), violated his constitutional rights when the Vernon

City Council ("the City Council") voted not to renew his license to operate a "game room"

business he owned, Smitty's Entertainment Center ("Smitty's"). More specifically, Plaintiff

contends that the City's actions contravened the procedural and substantive components of the

Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. Now

before the Court is the City's motion for summary judgment (Doc. 16) filed on April 26, 1999,

which was accompanied by evidence and a brief in support. Plaintiff has filed evidence and

submitted a brief in opposition, as well as a motion to strike portions of an affidavit filed by the

City in support of the motion for summary judgment. (Doc. 21). The City, in turn, filed a

reply and a motion to strike portions of Plaintiff's affidavit, which was submitted in opposition

to the motion for summary judgment. (Doc. 24).  Upon due consideration, the Court

concludes that both motions to strike (Doc's 21 and 24) are due to be DENIED and that the

City's motion for summary judgment (Doc. 16) is due to be GRANTED IN PART AND

26

DENIED IN PART. Further, the Court will sua sponte raise the issue of whether <u>Plaintiff</u> is entitled to partial summary judgment on liability on his procedural due process claim, and the City will be given 10 days to offer evidence and argument showing that such is not appropriate.

I. SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. <u>Id</u>. at 323. The movant's burden is not meager; it must illuminate for the court the reasons why the non-movant cannot raise a genuine issue of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Company</u>, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. <u>Celotex</u>, 477 U.S. at 324; <u>Cottle v. Storer Communication, Inc.</u>, 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence

Page 2 of 25

will not satisfy the non-movant's burden.  Cf. Mesnick v. General Elec. Co., 950 F.2d 816, 820 (1ˢᵗ Cir. 1991), cert. denied, 504 U.S. 985 (1992).

   While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, Fed. R. Civ. P. 56(c), the Rule "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5ᵗʰ Cir. 1996).  "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition."  Id.  See also Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11ᵗʰ Cir.) (en banc) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), cert. denied, 516 U.S. 817 (1995).

   In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden.  Anderson, 477 U.S. at 254-55.  The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11ᵗʰ Cir. 1992).  "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried.  The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11ᵗʰ Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'"  Tidwell v. Carter Products, 135 F.3d 1422, 1425 (11ᵗʰ Cir. 1998) (citing Carter v. City of Miami, 870 F.2d 578, 581 (11ᵗʰ Cir. 1989)).

## II. FACTS[1]

The material facts of this case are largely undisputed. Duly enacted by its City Council, City of Vernon ordinance no. PL-1-93 ("PL-1-93" or the "ordinance") establishes that every person, firm or corporation desiring to engage in a business, occupation, trade or profession within the City of Vernon is required to "pay for and procure" a license authorizing such person to engage in that designated business. PL-1-93 § 7. The fee for such licenses is set according to a schedule, comprised of a comprehensive list of 174 occupational categories, running the gamut from accountants and beauty shops to rubber vulcanizing and wrecker services, with corresponding fee amounts for each category. PL-1-93 § 1. In order to obtain a license initially, a business owner is required simply to go to Vernon's city hall, ask for a license, and to pay the scheduled fee. Depo. of Rose Marie Smith, at 23-24. Each license issued under the ordinance automatically expires on the 31st day of December after issuance, PL-1-93 § 5, thus requiring the payment for and procurement of a new annual license each January 1. While the fee for such new license is due immediately upon January 1, it is not considered "delinquent" until February 1, allowing a grace period to renew a license until January 31. Id. License renewal notices are mailed out each December by the City Clerk, and the applicant may pay the fee for such renewal either in person or by mail. Id. at 24-25. Engaging in any business, vocation, trade, occupation, or profession within the city without first having obtained a license under the ordinance is unlawful, and any person who does so is guilty of a misdemeanor and subject to a fine of not less than five nor more than one hundred dollars per day of operation

---

[1]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

without a license. Id. at § 8.[2]

Pursuant to PL-1-93, on June 3, 1996, the City issued to either Plaintiff or Plaintiff's mother, Carol W. Smith, a license to operate Smitty's, a video arcade and billiards "game room" that was then co-owned by Plaintiff and his mother.[3] After that license expired on December 31, 1996, Plaintiff applied for and was issued in January 1997 a license in his own name to operate Smitty's. In order to acquire this license, which would expire on December 31, 1997, Plaintiff completed the necessary paperwork and paid the scheduled fee.[4]

---

[2]Plaintiff has argued in his motion to strike that the copy of PL-1-93 submitted by the City in support of its motion for summary judgment is due to be excluded, for lack of proper authentication. However, the Court concludes Plaintiff's motion on this ground is without merit. Plaintiff has himself submitted an identical copy of PL-1-93 in his materials in opposition to the City's motion for summary judgment, and, further, the City's copy of the ordinance has been properly authenticated by an affidavit from the City's Assistant Clerk, Rebecca Cantrell. Thus, Plaintiff's motion on this ground is due to be denied.

[3]The City has filed a motion to strike portions of Plaintiff's affidavit, which was filed in opposition to the City's motion for summary judgment. The City first argues that Plaintiff made statements in his affidavit that contradict his prior sworn deposition testimony. More specifically, the City alleges that while Plaintiff asserts in his affidavit that he himself obtained the initial license for Smitty's in 1996 and "renewed" it in 1997, in his prior deposition, the City alleges, Plaintiff acknowledged that his mother obtained the 1996 license and that the license he took out in 1997 was in his own name for the first time. Although the Court agrees that there may be discrepancies between the Plaintiff's affidavit and deposition, the Court does not consider them to be material. The Court finds that Plaintiff's claims in this case simply do not turn upon whether Plaintiff or his mother took out the 1996 license or whether the 1997 license consequently was a "renewal." The City also argues that a number of Plaintiff's statements in his affidavit are due to be excluded because they contain "speculation, conjecture, hearsay, absence of personal knowledge and incompetent statements of opinion." Def. Motion to Strike ¶ 7. While there may be some merit to the City's position, the Court does not believe that the presence of these statements create, nor would their absence nullify, a genuine issue of material fact on any claim. Thus, the Court will deny the City's motion and consider the statements for what they are worth.

[4]It appears that the fee for the license for Smitty's would have been governed by listing 32 of the ordinance fee schedule, entitled "Billiard - Game Rooms," which provides:

"(A) Each person, firm, or corporation operating a place of amusement with pool tables, either standard size or otherwise, game tables, game machines, etc., first piece of equipment per year ---- $126.50

On December 16, 1997, the Alabama Beverage Control Board, with the assistance of the Vernon Police Department, conducted an undercover operation in order to investigate allegations that patrons at Smitty's were being paid illegally for points accumulated on video poker and slot machines located therein. On that date, Plaintiff's father, James T. Smith, was arrested while working at Smitty's on charges of possession of gambling records and possession of gambling devices, see §§ 13A-12-24, 13A-12-25, and 13A-12-27, Ala. Code 1975, after he paid an undercover agent $10.00 in cash for points he collected on a video poker machine. Plaintiff, who arrived after the arrest, and his father gave statements to police indicating that they were co-owners of Smitty's and that they had leased three video poker and slot machines from one James Snider in either June or July of 1997. See Def. Exh. 3 & 4. Plaintiff stated that Snider told them that a "newly" passed law made "paying out" on the machines legal and that Snider supplied them with merchandise, which Snider told them should be used to "pay off people [they] did not know and trust." Defendant's Exh. 3. Thus, Plaintiff admitted, "We did pay-off on these machines with the understanding that they were legal, to several patrons within the last six months." Id.

Plaintiff and his father agreed to assist the authorities apprehend Snider in a sting operation.[5] Plaintiff's father called Snider and told him that he was needed to repair one of the machines because he was losing money on it. Snider arrived a short time later and made incriminating statements about paying off on the machines to Plaintiff's father that were recorded by hidden microphones and overheard by agents. After exiting Smitty's, Snider was arrested as he entered his pick-up truck in the parking lot area, on charges of promoting gambling, see § 13A-12-22, Ala. Code 1975; possession of a gambling device; possession of

---

(B) Each additional table, per year ---- $33.50."

[5]The charges against James T. Smith were dropped because of his cooperation and willingness to testify against Snider.

gambling records; and possession of a controlled substance, see § 13A-12-212, Ala. Code 1975. Police seized from Smitty's three video gambling machines, as well as Snider's truck, three handguns recovered therein, and $13,127 in cash Snider was carrying.

In a closed session at its regular meeting on January 5, 1998, the Vernon City Council considered whether to decline to renew the business license that had been issued pursuant to PL-1-93 for Smitty's. Neither Plaintiff nor any other members of the public were present at the meeting. It is undisputed that Plaintiff was not given notice that the issue of his license would be on the agenda. At the meeting, Vernon Police Chief Ted Collins presented the Council with the facts and circumstances surrounding the December 16, 1997 raid and arrests at Smitty's, as set forth in the reports and statements contained in his file on the matter. Collins also informed the City Council of other calls and complaints police had received regarding improper participation by minors in certain games at Smitty's[6] and alcohol consumption in the parking lot area.[7] The City Council then voted unanimously not to renew the business license for Smitty's, which had expired on December 31, 1997, but would have otherwise been renewable without penalty until January 31, 1998. According to the deposition testimony of Vernon's Mayor, Rose Marie Smith, this was the first time the City had ever declined to renew a business license under PL-1-93 since it became effective on January 1, 1994, and the City has no written policies or procedures concerning whether or not license applications should be

---

[6]In her deposition, Mayor Smith alluded to problems with minors playing pool and other games located at Smitty's. Smith Depo. at 33, 35-36. Although not entirely clear, it appears that this reference concerns § 34-6-10, Ala. Code 1975, which makes it unlawful in Alabama for any person operating or managing a billiard or pool table upon which the public can play to knowingly permit any minor to play upon such table.

[7]In paragraph 3 of her affidavit, Rebecca Cantrell states that Chief Collins informed the City Council "of other calls and complaints regarding Smitty's," which were registered prior to the raid on that business on December 16, 1997. Plaintiff moves to strike this statement as hearsay. The motion is due to be denied, as Cantrell's statement is admissible to show what evidence was before the City Council when it decided not to renew Plaintiff's license.

granted or denied.

On January 6, 1998, Plaintiff received a hand-delivered letter from Mayor Smith, stating simply that the City Council had the day before unanimously voted not to renew the business license for Smitty's and expressing "regret the hardship this may work on you and your family." Although Plaintiff had until January 31, 1998 to apply for a renewal of his business license for Smitty's under the terms of the ordinance, Plaintiff did not make any attempt to do so. Nor did Plaintiff petition the City Council to reconsider its decision on the matter. Faced with the theat of sanctions under the ordinance, Plaintiff ceased his operation of Smitty's.

On March 9, 1998, Plaintiff filed this action against the City pursuant to 42 U.S.C. § 1983 ("section 1983"), seeking declaratory and injunctive relief and compensatory and punitive damages. Plaintiff claims that the City had violated the procedural component of the Due Process Clause by refusing to renew his business license for Smitty's without giving him notice or an opportunity to be heard on the matter, either before or after its decision. Plaintiff also asserts a claim based on the substantive component of the Due Process Clause. Finally, Plaintiff contends that the City's denial of his business license was arbitrary and capricious and, therefore, was a violation of the Equal Protection Clause of the Fourteenth Amendment. The City has now filed a motion for summary judgment.

## III. CONTENTIONS & ANALYSIS

In its motion for summary judgment, the City makes four arguments: (1) that Plaintiff has no constitutionally protected property interest in the renewal of his license to operate Smitty's, and, therefore, he cannot recover on his procedural due process claim; (2) that Plaintiff also cannot recover on that claim because, even if he does have a protected property interest, he received all the process that was due because he did not contact the City Council to seek a hearing after he received notice that his license would not be renewed; (3) that Plaintiff's substantive due process and equal protection claims are untenable because the City's action in declining to renew the license did not infringe upon a fundamental constitutional right

and was rationally related to a legitimate government interest, given that it is undisputed that illegal gambling had been occurring on the premises of Smitty's ; and (4) that municipalities cannot be liable for punitive damages in actions brought under 42 U.S.C. § 1983.

### A. PROCEDURAL DUE PROCESS

Plaintiff asserts that the City violated his rights protected by the procedural component of the Due Process Clause of the Fourteenth Amendment.[8]  Plaintiff first alleges that the City Council voted not to renew his business license without giving him proper notice or an opportunity to be heard, thereby depriving him of property and liberty interests without due process of law.  Complaint ¶ 11.  There are two questions in the analysis of such a procedural due process claim: Did the plaintiff have a property or liberty interest of which he was deprived by state action?  If so, did the plaintiff receive sufficient process regarding that deprivation?  Ross v. Clayton County, Ga., 173 F.3d 1305 (11th Cir. 1999).

The City first argues that Plaintiff had no property interest in the renewal of his license.  In order to have a property interest in a government benefit a person must have a "legitimate claim of entitlement to it."  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  Property interests are not created by the Constitution but are defined by existing rules or understandings stemming from an independent source such as state law.  Id.  A claim of entitlement to a benefit may be implied from policies, practices, and understandings of the granting institution.  Perry v. Sindermann, 408 U.S. 593, 603 (1972).  "[A] state-issued license for the continued pursuit of the licensee's livelihood, renewable periodically on payment of a fee and revocable only for cause creates a property interest in the licensee."  Richardson v. Town of Eastover, 922 F.2d 1152, 1157 (4th Cir. 1991).  See also Bell v. Burson, 402 U.S. 535, 539 (1971) (finding a property interest in a state driver's license that was renewable upon payment of a fee and

---

[8]The Fourteenth Amendment of the United States Constitution provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law."

revocable only for cause, given that once such a license is issued, its continued possession "may become essential in the pursuit of a livelihood"). Whether state law creates a property interest is a question of law for a court to decide. <u>Marine One, Inc. v. Manatee County</u>, 877 F.2d 892 (11th Cir. 1989).

In arguing against the existence of a property right in Plaintiff's license, the City emphasizes that it has broad power to regulate and to refuse to license amusement businesses pursuant to § 11-51-102, Ala. Code 1975.[9] However, the issues of the City's licensing discretion in this case and whether Plaintiff had a property interest in the renewal of his license simply are not determined by the terms of that statute. The Alabama legislature has statutorily vested in municipalities a great deal of power and discretion to regulate the field of licensing amusement businesses. Thus, it cannot seriously be disputed that § 11-51-102 does not itself create a property interest in favor of Plaintiff. But it is up to each municipality whether or not to actually exercise the power extended by § 11-51-102 through the enactment of regulatory ordinances. The business licenses required by the City are issued under PL-1-93, not under § 11-51-102. Accordingly, it may be that the licensing scheme under PL-1-93 may create a legitimate claim of entitlement to the renewal of licenses issued under its authority, and therefore a property interest, notwithstanding that the City would have been free under § 11-51-102 to enact an ordinance regulating amusement businesses in which no property interest would attach to a license, based upon greater discretion retained by the municipality to

---

[9]§ 11-51-102, Ala. Code 1975, provides:

"Any city or town shall have the power to license, tax, regulate, restrain or prohibit theatrical and other amusements, billiard and pool tables, nine or tenpin alleys, box or ball alleys, shooting galleries, theatres, parks and other places of amusement when, in the opinion of the council or other governing body, the public good or safety demands it, to refuse to license any or all such businesses and to authorize the mayor or other chief executive officer by proclamation to cause any or all houses or places of amusement or houses or places for the sale of firearms or other deadly weapons to be closed for a period of not longer than the next meeting of the city or town council or other governing body."

withhold licenses.  See Richardson, 922 F.2d at 1159; Bayview-Lofberg's, Inc. v. City of Milwaukee, 905 F.2d 142, 144-45 (7th Cir. 1990) (both acknowledging that a property interest may be created by a local licensing ordinance, despite state statutes granting broad regulatory discretion to municipalities in the licensing area).

There is also authority under Alabama state law suggesting that a license required to be renewed periodically for the payment of a scheduled fee under a general occupational licensing ordinance enacted by a municipality for revenue raising rather than regulatory purposes may not be revoked or withheld, except, perhaps, for cause, if an applicant is willing to pay the required fee.  In Lee v. Renfro, 257 Ala. 679, 60 So. 2d 849 (1952), the Alabama Supreme Court held that the defendant municipality had wrongfully revoked the plaintiff's local business license to operate a barbershop.  While acknowledging that the regulation of such a business was certainly within the police powers of the municipality, the Court ordered the reinstatement of the plaintiff's license because the license in question was issued pursuant to a general licensing schedule ordinance enacted to raise revenue, not to regulate the conduct of any business  Id. at 681-82, 60 So. 2d at 851.  Accord City of Hawkinsville v. Wilson & Wilson, Inc., 231 Ga. 110, 111,  200 S.E.2d 262, 263 (1973) ("[W]hile under the police power of the City if Hawkinsville there may be an untapped source of authority to regulate details of the operation of a lawful business, a consideration of what might be done under a properly worded licensing ordinance is inappropriate here because only a taxing ordinance is before the court in this case.") Indeed, the Court stated that the license issued under such a revenue raising ordinance was not subject to revocation[10] at all once the fee was paid, requiring the

_____

[10]The Lee court also cited with approval a Georgia case, Brown v. City of Thomasville, 156 Ga. 260, 118 S.E. 854, 858 (1923), which held that the refusal to grant a license under a revenue raising statute to a person desiring to engage in a lawful business which is "per se useful and recognized as being a fit object for taxation for the purpose of raising revenue" could not be done arbitrarily or capriciously.

municipality to resort to other measures besides license revocation if it desired to shut down the plaintiff's business, such as instituting a nuisance suit. Id. at 683, 60 So. 2d at 852. However, it should be noted that the court did analyze the reasons offered by the municipality for the revocation and found them to be arbitrary, as being entirely unrelated to the conduct of the plaintiff's barber business, id. at 682, 60 So. 2d at 852, perhaps thereby suggesting that the result in the case might have been different had the municipality shown valid cause. Indeed, it appears to be the rule in Alabama that a city may deny or withhold a business license so long as it does not act arbitrarily in doing so, for subsequent cases have held that "[t]here is no contract, vested right or property [interest] in a license as against the power of a state or municipality to revoke it in a proper case." Spradlin v. Spradlin, 601 So. 2d 76, 78 (Ala. 1992) (upholding a city's revocation of a plaintiff's business license allowing her to operate a "junk yard," where such was done for nonarbitrary reasons), quoting O'Bar v. Town of Rainbow City, 269 Ala. 247, 249, 112 So. 2d 790, 791 (1959).[11]

The ordinance under which Plaintiff's license was potentially renewable, PL-1-93, is a general licensing ordinance that requires all persons desiring to engage in any occupation to pay for and obtain a license according to a fee schedule, similar to the measure in Lee v. Renfro.

---

[11]The City contends in the instant case that Spradlin and O'Bar indicate that Alabama recognizes no property whatsoever in business licenses of any kind. However, such is clearly not the case, as Alabama courts have recognized that a due process property interest may exist in a number of occupational licenses, both professional and non-professional. See, e.g., Smallwood v. State Dep't of Human Resources, 716 So. 2d 684 (Ala. Civ. App. 1998) (child care provider's daycare license); Averi v. Alabama State Bd. of Podiatry, 567 So. 2d 343 (Ala. Civ. App. 1990) (medical license); Huckabay v. Alabama State Bar, 631 So. 2d 855 (Ala. 1993) (law license). Spradlin and O'Bar merely indicate that any property right that may exist in a license in favor of a holder is not absolute; that is, the government may always withhold or revoke a license upon a showing of cause. That a license integral to the pursuit of one's livelihood may be revoked or withheld only for cause indicates the existence of a property right for due process purposes. See Bell v. Burson, supra; Barry v. Barchi, 443 U.S. 55 (1979).

Notwithstanding a grant of broad authority allowing municipalities to license, regulate or prohibit amusement businesses under § 11-51-102, the terms of PL-1-93 give no indication the City has undertaken to regulate or license amusement enterprises <u>as such</u>. The ordinance simply regards them as one of the many lawful businesses in which one may be engaged in Vernon, Alabama, upon the payment of a scheduled fee. The City asserts that it could deny or withhold any business license at its discretion. However, there are no provisions in the ordinance indicating that the City has reserved such authority. Aside from the payment of the scheduled fee, PL-1-93 is silent as to conditions or standards for issuance, and there are no terms expressly contemplating that a license might be denied, suspended, or revoked. Indeed, the language of the ordinance itself often suggests that a subject license is an occupational tax; section 3 speaks in terms of a "license" under the ordinance being "levied," while section 5 similarly states that "all license required to be paid under the provisions of this ordinance, shall be due immediately upon commencement of business . . . ."[12] Further, it is undisputed that the City has no established written procedures regarding the review of license applications and that

_____

[12]In an attempt to cast the ordinance as primarily a regulatory measure, the City quotes the preamble to section 2 of the ordinance which states that said section was enacted "for the protection of the lives, health and property of the citizens, the maintenance of good order and quiet of the community and the preservation of public morals . . . ." However, section 2 of the ordinance deals with the particular matter of license fees for businesses located outside the city limits of Vernon but within its police jurisdiction. Under § 11-51-91, Ala. Code 1975, municipalities are authorized to collect such license fees, although only in order to be reimbursed for the costs of supplying police protection and other services to the police jurisdiction, not to generate general revenues. <u>See, e.g.,</u> Alabama Power Co. v. City of Carbon Hill, 234 Ala. 489, 175 So. 289 (1937), <u>overruled in part on other grounds,</u> State Dep't of Revenue v. Reynolds Metals Co., 541 So.2d 524 (Ala.1988); <u>Van Hook v. City of Selma,</u> 70 Ala. 361 (1881). <u>Cf.</u> City of Mountain Brook v. Beaty, 349 So.2d 1097 (Ala.1977). Thus, it is unsurprising that the City would include as a preamble to section 2 that license fees under that section were related to police powers, so as to indicate affirmatively that such were not being collected to raise general revenues. In fact, the absence of a similar statement with respect to licenses for businesses within the city limits reinforces that such licenses were required primarily to raise revenue. Moreover, the fact remains that the ordinance does not contain substantive regulatory provisions, nor does it expressly contemplate that a license would be withheld if the applicant would pay the applicable fee.

the City had never withheld a license or even considered doing so until it declined to renew
Plaintiff's license in this case.  Rather than a regulatory measure supplying standards for the
performance of duties in the operation of a business, the licensing ordinance appears to be
primarily a revenue-producing measure passed pursuant to § 11-51-90, Ala. Code 1975.[13]
Under these circumstances, Plaintiff had a property interest at stake in the City's decision not
to renew his license, as the evidence indicates such license was integral to the continued pursuit
of his livelihood, was renewable periodically upon payment of a fee, and could have been
withheld only for cause.  See Richardson, 922 F.2d at 1158 (holding that holder of a local dance
hall license had a property interest in its renewal where the evidence indicated that the renewal
of such licenses had previously been a mere "ministerial act," done upon payment of a fee);
Barry v. Barchi, 443 U.S. 55, 64 & n.11 (1979) (horse trainer had property interest in his
license where such could be revoked only for cause); cf. Baer v. City of Wauwatosa, 716 F.2d
1117, 1122 (7th Cir. 1983) (where ordinance governing licenses to sell firearms made no
provision for standards or conditions for revocation, it might be implied that the city could
revoke the license only upon a showing of cause, and thus plaintiff had a due process property
interest in his license).

  Moreover, the Court finds that the City is not entitled to summary judgment on

---

[13]Section 11-51-90, Ala. Code 1975, provides, in pertinent part, as follows:
"(a) All municipalities shall have the following powers:

  (1)  To license any exhibition, trade, business, vocation, occupation, or profession not
prohibited by the Constitution or laws of the state which may be engaged in or carried on in the city
or town.

  (2)  To fix the amount of licenses, the time for which they are to run, not exceeding one year,
to provide a penalty for doing business without a license, and to charge a fee of not exceeding five
dollars ($5) for issuing each license [which, the Court notes, happens to be the amount of the fee
charged by the City under § 3 of PL-1-93].
". . . .

"(c) The power to license conferred by this division may be used in the exercise of the police power
as well as for the purpose of raising revenue, or both."

Plaintiff's procedural due process claim because the evidence suggests Plaintiff had a protected liberty interest at stake when the City Council voted not to renew his license. "Decades ago, the Supreme Court recognized that the 'right to work for a living in the common occupations of the community' is a form of liberty interest originating in the Constitution. Truax v. Raich, 239 U.S. 33, 41 [ (1915)]; Hampton v. Mow Sun Wong, 426 U.S. 88, 102-03, n. 23 [ (1976)]." Becker v. Illinois Real Estate Admin. and Disciplinary Bd., 884 F.2d 955, 957 (7th Cir. 1989). Indeed, just this past term, the Supreme Court again acknowledged that the definition of "liberty" under the Due Process Clause includes some generalized right to pursue the private employment of one's choosing, although the Court emphasized that such a right is subject to reasonable government regulation. See Conn v. Gabbert, — U.S. —, 119 S.Ct. 1292, 1295-96 (1999). Thus, in Shaw v. Hospital Authority of Cobb County, 507 F.2d 625, 628 (5th Cir. 1975), it was held that where the denial of staff privileges seriously limited the ability of a physician to engage in private practice, a liberty interest was implicated and due process had to be afforded.

By its City Council's vote not to renew Plaintiff's license, the City completely prevents Plaintiff from operating a game room business, which is, under the PL-1-93, a wholly lawful occupation of the community, anywhere within the city limits or police jurisdiction of Vernon. This implicates a liberty interest. See Sanderson v. Village of Greenhills, 726 F.2d 284, 286-87 (6th Cir. 1984) (holding that a plaintiff who was arbitrarily denied a permit to operate a billiards parlor by a municipality had been deprived of a protected liberty interest to engage in "whatever legal business he elects to pursue"); cf. Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 65 n.4 (9th Cir. 1994) (assuming without deciding that the operation of skill-based amusement games is within the range of occupations protected under due process "liberty"); Morley's Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1217 n.5 (11th Cir. 1995) (holding that the removal of the plaintiffs from a county sheriff's wrecker "rotation list," did not infringe upon a due process liberty interest because such removal did not "affect their right to

operate wrecker service businesses, to remove vehicles from public property at the request of the owners, or to provide wrecker services to any member of the public who requests such services.") See also Scott v. Village of Kewaskum, 786 F.2d 338, 340 (7th Cir. 1986) ("If [a state] had passed a law saying that 'No one shall open any business without a license,' it is plain enough that an application for a license would put 'liberty' in the balance, and that the government would be required to offer some kind of hearing. It could not make all private life depend on official whim by the expedient of saying that each village board shall grant licenses 'as it sees fit' or some equivalent, and using that discretion to say that there was no need for a hearing.")

Thus it has been established that the evidence is sufficient in this case to indicate that Plaintiff had constitutionally protected property and liberty interests at stake in the denial of his business license. The City argues, however, that Plaintiff was given all the process that he was due because he failed to request a hearing. Therefore, the City claims, Plaintiff cannot prevail on his procedural due process claim.

The opportunity to present reasons, either in person or in writing, why proposed action depriving a person of life, liberty, or property should not be taken is a fundamental due process requirement. Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546 (1985). Generally, the Due Process Clause entitles persons to notice and an opportunity to be heard before the government deprives them of life, liberty or property. United States v. Land, Winston County, 163 F.3d 1295 (11th Cir. 1998), citing United States v. James Daniel Good Real Property, 510 U.S. 43, 48 (1993). In Parratt v. Taylor, 451 U.S. 527, 539 (1981), overruled on other grounds not relevant here, Daniels v. Williams, 474 U.S. 327 (1986), the Supreme Court explained, however, that the requirement of a hearing does not always require the state to provide a hearing prior to the initial deprivation, where there is "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process." However, the Parratt Court also noted that even in such a case, procedural due process requires

the "availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking. . . ." Id., 474 U.S. at 539. See also Gilbert v. Homar, 520 U.S. 924 (1997); Loudermill, supra; Barry v. Barchi, 443 U.S. 55 (1979).

In order to determine what process is actually due under the Constitution, courts look to the interest-balancing framework set forth by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335 (citation omitted).

Plaintiff's interest in the renewal of his license is undoubtedly substantial, as without it he would be prohibited by law from pursuing his occupation in Vernon for approximately one year. See FDIC v. Mallen, 486 U.S. 230, 243 (1988); Loudermill, 470 U.S. at 543. It is admitted that the City Council voted not to renew Plaintiff's license without giving Plaintiff prior notice or any opportunity to be heard. In defense of its interest, however, the City argues that it had the right to deny the renewal without providing notice or a hearing based upon the need to act quickly in the public interest to prevent illegal gambling. The Court tends to agree, since there was strong evidence before the City Council indicating that illegal gambling had been occurring at Smitty's . Moreover, it is significant that the Council's vote on January 5, 1998 denying Plaintiff a license renewal did not even immediately prevent Plaintiff from earning a living through the operation of his business; Plaintiff would have been permitted to operate under his expired license until January 31, 1998, when the fee for a new license would have been deemed "delinquent" under the ordinance. However, even assuming the City was

not constitutionally required to provide Plaintiff with notice and an opportunity to be heard prior to the City Council's vote on his license renewal, due process would certainly require the availability of a sufficiently prompt and adequate postdeprivation hearing allowing Plaintiff to challenge the City's action. Gilbert; Parratt; Barry, supra.

The City concedes that Plaintiff was never expressly offered any opportunity to be heard or respond on the matter of his license renewal, before or even after the City Council's vote. The City argues, though, that Plaintiff's procedural due process rights were not violated because Plaintiff was supplied with notice of the City Council's vote, and he could have thereafter attempted to renew his license or contact the City Council to obtain a hearing at which it might have reconsidered its decision. By failing to apply for a license renewal or request such a hearing, the City maintains, Plaintiff waived his right to a hearing. The Court disagrees.

As to the failure to attempt to obtain a renewal of his license, the evidence indicates that the standard procedure for renewing business licenses under PL-1-93 was to apply to the city clerk for one, either in person or by mail, after receiving a notice that a renewal was required. It is undisputed that Plaintiff did not make such an application in this case. However, Plaintiff had also received written notice from the Mayor that the City Council had unanimously voted not to renew his license, and, on its face, this notice appeared to indicate a final decision by the highest city authority. The city argues that Plaintiff still could have attempted to renew his license, but there is no indication that the city clerk had authority to issue a license renewal in the face of the City Council's contrary vote, nor did Plaintiff's notice suggest that an application might have been fruitful. Thus, the evidence suggests that any attempt to go through established procedures for license renewal would have been futile, and the law does not require the doing of a futile act.

Now the Court will turn to the City's contention that Plaintiff has waived his procedural due process claim by failing to request a hearing before the City Council. Ordinarily, the

failure to request a hearing is deemed a waiver of a procedural due process claim, if there are established procedures under which a hearing might have been sought. Grandison v. Smith, 779 F.2d 637, 641 (11th Cir. 1986) (emphasis added), citing Hoffman v. United States Dep't of Housing & Urban Development, 519 F.2d 1160, 1165 (5th Cir. 1975). However, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). Accordingly, courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and do not presume acquiescence in the loss of such rights. Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Therefore, where a party is not informed of a right to a hearing and there are no established procedures affording a hearing on the matter in question, that party is generally deemed not to have waived a procedural due process claim. Ostlund v. Bobb, 825 F.2d 1371, 1373-74 (9th Cir. 1987), cert. denied, 486 U.S. 1033 (1988); Jones v. Preuit & Mauldin, 808 F.2d 1435, 1443 (11th Cir. 1987) (holding that plaintiff did not waive his right to a predeprivation hearing where there were no such hearing procedures available), opinion vacated on other grounds, on reh'g, 851 F.2d 1321 (11th Cir. 1988) (en banc), cert. granted and judgment vacated, 489 U.S. 1002, on remand, 876 F.2d 1480 (11th Cir. 1989).

    The evidence indicates that Plaintiff did not waive his right to a hearing by failing to request one under the circumstances presented here. The notice given to Plaintiff simply stated that the City Council had unanimously voted not to renew his license. There was nothing to indicate either that this decision was anything but final or that Plaintiff would be given an opportunity to present his side of the story at some later time. It is undisputed that the City had no written policies or procedures whatsoever regarding hearings for those who are denied a license under PL-1-93, but the City maintains that a sufficient opportunity to be heard was presented by the fact that meetings of the City Council are open to the public. While the City would have likely avoided any procedural due process violation by expressly offering Plaintiff

a timely opportunity to be heard at a council meeting, see Richardson, 922 F.2d at 1159-60, no such offer was ever extended to Plaintiff. In the absence of an express invitation or even notice alerting Plaintiff that he might seek reconsideration of the City Council's decision at a public meeting, the mere fact that the public is generally permitted to speak at City Council meetings in Vernon is insufficient to show a voluntary and knowing waiver of a constitutional right. The City's position, that the onus was on Plaintiff to take the initiative in securing a hearing, despite the lack of notice advising him of his right to a hearing and the lack of any established hearing procedures regarding a denial of a license under the ordinance, is simply untenable. Ostlund; Jones, supra.

From the evidence now before the Court, it appears that the City summarily and finally denied Plaintiff the renewal of his license, and thereby the ability to engage in an otherwise entirely lawful occupation, without providing him so much as a sliver of procedure to safeguard against an erroneous deprivation. Indeed, it seems undisputed that prior to this lawsuit Plaintiff was not given either (1) an official explanation of the reasons or evidence relied upon by the City Council in voting not to renew his license[14] or (2) an opportunity to respond to those charges at any time, either formally or informally. Since the City has no procedures for hearings, it appears that a lawsuit in state court would be the first and only opportunity

---

[14]The City fails to address that the evidence also appears to suggest that Plaintiff was not afforded constitutionally adequate notice in this case. When the government takes an action that deprives a person of a protected due process interest concerning employment, the person is "entitled to oral or written notice of the charges against him, an explanation of the government's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546. Thus, the government must provide notice of all of the reasons relied upon in reaching an adverse decision. Bass v. City of Albany, 968 F.2d 1067, 1068-69 (11th Cir. 1992). Even assuming for the moment that Plaintiff was given a sufficiently prompt opportunity to be heard, the evidence indicates that Plaintiff was notified only of the result of the City Council's action regarding his license. Thus, even if Plaintiff was afforded an opportunity to be heard, Plaintiff would not have been in a position to address all of the charges leading to the City Council's decision, because, before discovery in this lawsuit, he was never provided with notice of those charges or what evidence supported them.

provided under Alabama state law to be heard on the matter of a license denial under PL-1-93. See, e.g., Lee v. Renfro; Spradlin v. Spradlin, supra. This presents a situation that is fraught with needless risk of an erroneous deprivation and where additional procedures would be of great value. "Some opportunity for the [person denied a license] to present his side of the case is recurringly of obvious value in reaching an accurate decision." Loudermill, 470 U.S. at 543. The denial of a license for cause will often involve factual disputes, and even where the facts are clear, the appropriateness or necessity of denying a license entirely may not be. See id.

The Court would agree that prompt, relatively informal, non-adversarial hearings would have satisfied due process for the denial of a license under PL-1-93 based upon the evidence that illegal gambling had occurred at Smitty's. See Richardson, 922 F.2d at 1160-61. In addition, a person can obtain a subsequent judicial hearing in the state courts challenging the propriety of the City Council's action. And, as the Court has already stated, an informal hearing before the City Council, which would entail minuscule administrative costs, would have been constitutionally sufficient had it been afforded promptly after the City Council's decision on January 5, 1997. But at some point, the delay in holding a hearing on Plaintiff's license would have become a procedural due process violation. See Barry v. Barchi, 443 U.S. at 66. To say that due process is satisfied here, where a person who is deprived of his livelihood may not be afforded any opportunity for many months to present his side of the story, after he files a civil action in state court, would be to derogate the constitutional principle. Thus, the Court concludes that the City is not entitled to summary judgment on Plaintiff's procedural due process claim.

In fact, the Court believes that the evidence presented at this time is sufficient to warrant partial summary judgment in favor of Plaintiff on the issue of the City's liability on the procedural due process claim. The United States Court of Appeals for the Eleventh Circuit recently explained as follows regarding a District Court's power to raise the issue of summary judgment sua sponte:

> A district court possesses the power to enter summary judgment sua sponte
> provided the losing party 'was on notice that she had to come forward with all
> of her evidence.' Celotex Corp. v. Catrett, 477 U.S. 317, 326 [ ] (1986).
> Under Fed. R. Civ. P. 56(c), motions for summary judgment must be served on
> opponents at least ten days prior to the hearing. As we have long recognized,
> 'this notice provision is not an unimportant technicality, but a vital procedural
> safeguard' to a party's right to offer the best defense to any challenge. Massey v.
> Congress Life Ins. Co., 116 F.3d 1414, 1417 (11th Cir. 1997) (citing National
> Fire Ins. v. Bartolazo, 27 F.3d 518, 520 (11th Cir. 1994); Hanson v. Polk
> County Land, Inc., 608 F.2d 129, 131 (5th Cir. 1979)). But so long as the party
> against whom judgment will be entered is given sufficient advance notice and has
> been afforded an adequate opportunity to demonstrate why summary judgment
> should not be granted, then granting summary judgment sua sponte is entirely
> appropriate. See 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
> Federal Practice and Procedure § 2720 (3d ed. 1998).

Burton v. City of Belle Glade, 1999 WL 425895 at *18, — F.3d —, — (11th Cir. June 25,

1999). Accordingly, the Court will afford the City ten days to present evidence and argument

to demonstrate why partial summary judgment should not be granted in favor of Plaintiff as to

liability on the procedural due process claim.

Of course, it should be recalled that even if Plaintiff succeeds on his procedural due

process claim, that does not necessarily mean that he is entitled to his license or damages for

the loss thereof; rather, he would be entitled to injunctive relief requiring the City to hold a

belated hearing on his license that will satisfy due process. See McKinney v. Pate, 20 F.3d

1550, 1557 & n.11 (11th Cir. 1995); Perry v. Sindermann, 408 U.S. at 603; see also Monroe

County, Florida v. United States Dept. of Labor, 690 F.2d 1359, 1362 (11th Cir. 1982)

(holding that plaintiff was not entitled to backpay award despite his employer's use of

constitutionally deficient termination procedures where it was ultimately shown that

substantive termination decision was justified). However, he might, potentially, also prove that

he is entitled to actual damages, such as mental suffering and emotional distress, based upon the

City's failure to afford him a hearing (as opposed to the City's failure to renew his license). See

Carey v. Piphus, 435 U.S. 247, 263-64 (1978); Monroe County, Florida, supra. The Court would note that there has been no evidence presented that indicates Plaintiff suffered such damages, and given that Plaintiff did not make any attempt to obtain a hearing, such damages would likely be slight or nonexistent. However, even if Plaintiff failed to prove actual damages, he would still be entitled to recover nominal damages for a procedural due process violation, Carey, 435 U.S. at 266, which could justify an award of attorney fees as the prevailing party. See Farrar v. Hobby, 506 U.S. 103 (1992).

### B. SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION

In addition to the foregoing procedural due process claim, Plaintiff has also asserted claims under the substantive component of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. See Complaint ¶12 & part IV ¶ 1(b). Rather than challenging the procedures, or lack thereof, employed in the City's decision to deny the renewal of his license to operate Smitty's , the substantive due process and equal protection claims attack the substance of the City's decision to deny the renewal of Plaintiff's license. The City has moved for summary judgment on these claims. However, the Court concludes that the viability of Plaintiff's procedural due process claim militates against the Court's addressing the merits of the substantive due process and equal protection claims at this time.

The Court has concluded that the City is not entitled to summary judgment on Plaintiff's procedural due process claim. Indeed, the Court has concluded that there is sufficient evidence before the Court to conclude that partial summary judgment as to the City's liability on that claim would be appropriate. If Plaintiff is successful on this claim, the primary relief to which he would be entitled would be an injunction ordering the City to hold a hearing on the renewal of his license. McKinney, supra. In such a circumstance, the City Council would again consider the merits of whether or not to renew Plaintiff's license at that hearing, potentially even reversing its prior decision. Thus, it is clear that the outcome of such a hearing could impact upon whether Plaintiff wishes to pursue his substantive due process and equal protection

claims. In this type of situation, the interests of justice are best served by resolving whether or not Plaintiff's procedural due process rights have been violated; if they have, the matter will be remanded to the City to comply with minimum due process standards. See Ferguson v. Thomas, 430 F.2d 852, 858 (5th Cir. 1970); French v. Bashful, 425 F.2d 182, 184 (5th Cir.), cert. denied, 400 U.S. 941 (1970). Then, once the procedural issues are settled, attacks upon the substance of the final decision of the City are in a better posture to be reviewed in federal court. Id.; see also, e.g., Bowling v. Scott, 587 F.2d 229 (5th Cir. 1978); Laje v. R. E. Thomason General Hospital, 564 F.2d 1159 (5th Cir. 1977) (where courts remanded cases to correct procedural due process deprivations and then later addressed attacks upon the substantive decision). Thus, the Court will deny the City's motion for summary judgment on the substantive due process and equal protection claims, although the Court expresses no opinion regarding whether such claims might be maintained under the evidence presented.

### C.  PUNITIVE DAMAGES UNDER 42 U.S.C. § 1983

Plaintiff seeks punitive damages from the City. Complaint, part IV ¶3. The City has moved for summary judgment on this issue, contending that punitive damages are not recoverable against a municipality in an action brought pursuant to 42 U.S.C. § 1983. The City is correct on this point. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981). Thus, the City's motion for summary judgment is due to be granted as to this ground.

### IV.  CONCLUSION

The motions to strike, filed by Plaintiff (Doc. 21) and by the City (Doc. 24) are both due to be DENIED. The City's motion for summary judgment (Doc. 16) is due to be GRANTED IN PART AND DENIED IN PART. The Court has determined that the City is not entitled to summary judgment on Plaintiff's procedural due process claim. Indeed, the Court concludes that the evidence presented is sufficient to show affirmatively that the City violated Plaintiff's procedural due process rights, and the City will be afforded ten days to offer evidence and argument to demonstrate why partial summary judgment on the issue of liability does not

lie against the City on Plaintiff's procedural due process claim. Because Plaintiff's due process claim is still viable, he may be entitled to a belated due process hearing, the outcome of which could affect whether Plaintiff desires to proceed on his substantive due process and equal protection claims attacking the substance of the City's decision to deny the renewal of his license. Given that situation, the Court has concluded that it should not now address the merits of Plaintiff's attacks upon the City's substantive decision not to renew his business license. Thus, the City's motion for summary judgment is denied to the extent it sought the dismissal of Plaintiff's substantive due process and equal protection claims. However, the City cannot be held liable for punitive damages under 42 U.S.C. § 1983, so the City's motion for summary judgment is due to be granted as to that ground.

DONE and ORDERED this __29th__ day of July 1999.


H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE